1  HOWARD KOLLITZ (State Bar No. 059611)
   *hkollitz@dgdk.com*
2  WALTER K. OETZELL (State Bar No. 109769)
   *woetzell@dgdk.com*
3  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@dgdk.com*
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   1900 Avenue of the Stars, 11th Floor
5  Los Angeles, California  90067-4402
   Telephone: (310) 277-0077
6  Facsimile:  (310) 277-5735
7
   Attorneys for Richard K. Diamond, Chapter 7
8  Trustee

9              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
10                 LOS ANGELES DIVISION

11 | In re:                              | Case No.: 2:16-bk-23679-SK
12 |                                     | Chapter 7
   | Associated Third Party Administrators, |
13 |                                     | (Jointly administered under 2:16-bk-23682-SK)
   |               Debtor.               |
14 |                                     | **TRUSTEE'S AMENDED MOTION FOR**
15 |                                     | **AUTHORITY TO PURCHASE**
   |                                     | **EXTENDED REPORTING PERIOD**
16 | In re:                              | **UNDER DEBTOR'S PROFESSIONAL**
   |                                     | **LIABILITY INSURANCE POLICY**
17 | Allied Fund Administrators, LLC,    |
18 |                                     | Requested Hearing on Shortened Time
   |               Debtor.               | Date:   March 29, 2017
19 |                                     | Time:   9:00 a.m.
   |                                     | Ctrm:   1575
20 |                                     |         255 East Temple Street,
21 | ☒  Affects Both Debtors             |         Los Angeles, CA 90012
22 | ☐  Affects Associated Third Party
   |      Administrators
23
24 | ☐  Affects Allied Fund Administrators, LLC
25
26
27
28

Richard K. Diamond, the Chapter 7 trustee (the "**Trustee**") for the jointly administered bankruptcy estates of Associated Third Party Administrators ("**ATPA**") and Allied Fund Administrators, LLC ("**Allied**" and together with ATPA, the "**Debtors**"), will and hereby does move (the "Motion") for authority to purchase an extended reporting period under a professional liability insurance policy pursuant to which the Debtors are insureds, as follows:[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.

### PROCEDURAL BACKGROUND

**1.**     On October 17, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 cases (the "**Cases**") in the above-captioned court (the "**Court**").

**2.**     By orders entered on December 8, 2016 (Docket No. 235) and December 14, 2016 (Docket No. 257), the Court approved a stipulation (Docket No. 193-1, the "**OE Transition Services Stipulation**") between ATPA and the Trustees of the Operating Engineers Trust Funds and Other Operating Engineers Entities ("**OE**"), formerly clients of ATPA's pension and benefit plan administration services.  Under the OE Stipulation, OE agreed to fund certain operating expenses of ATPA during a transition period in order to obtain emergency transition services to facilitate the transfer of data from ATPA to alternate third party administrators designated by OE and ATPA agreed to permit access to its premises and information systems for this purpose.

**3.**     On December 16, 2017, the Court entered an order (Docket No, 263) approving a stipulation (Docket No. 233, the "**Ad Hoc Group Transition Services Stipulation**") between ATPA and participating members (the "**Participating Group Trusts and Funds**") of the Ad Hoc Employee Health and Pension Trust and Fund Group (the "**Ad Hoc Group**"), also formerly clients of ATPA's pension and benefit plan administration services.  Under the Ad Hoc Group Stipulation, the Participating Group Trusts and Funds agreed to fund certain operating expenses of ATPA during a transition period in order to obtain emergency transition services to facilitate the transfer

---

[1] The Trustee has concurrently filed an Application for Order Setting Hearing on Shortened Notice, requesting that the Motion be set for hearing on March 29, 2017, at 9:00 a.m.

1   of data from ATPA to alternate third party administrators designated by them and ATPA agreed to

2   permit access to its premises and information systems, and the services of certain of its employees,

3   for this purpose.  The Ad Hoc Group Stipulation also provides for the sharing, among OE and the

4   Participating Group Trusts and Funds of the operating expenses incurred during the transition

5   period.

6       **4.**      On December 9, 2017, the Court entered an order (Docket No. 242) providing for

7   conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code, effective as of January

8   19, 2017, the date after the conclusion of the transition period under the Ad Hoc Group Transition

9   Services Stipulation.  On January 19, 2017, the Cases were converted to cases under Chapter 7 of

10  the Bankruptcy Code.

11      **5.**      The notice of the Trustee's appointment was filed on January 24, 2017, and he has

12  served as the duly authorized Trustee for the Debtors' estates continually since that date.

13                                          **B.**

14                                   **THE POLICY**

15      **6.**      The Debtors are insureds under Chubb Professional Portfolio Policy No. 8246-1111

16  (the "**Policy**"), a copy of which is attached as **<u>Exhibit A</u>** to the Declaration of Martin G. Bunin

17  attached hereto.   The Policy includes a Miscellaneous Professional and Technology Services

18  Liability Coverage Part under which the insurer agreed to pay on behalf of the insureds, losses on

19  account of claims first made during the policy period or, if applicable, an extended reporting period,

20  arising from errors and omissions made by the insureds in the course of providing professional

21  services.  The maximum aggregate limit of liability under this coverage part is $10 million and each

22  claim is subject a $100,000 self-insured retention.

23      **7.**      The policy period of the Policy expired on January 31, 2017.  The Policy provides

24  that the insureds have the right to purchase a one year "Extended Reporting Period".   If the

25  Extended Reporting Period is purchased, the period during which claims may be reported under the

26  Policy would be extended by one year.

27      **8.**      The additional premium (the "**Extended Reporting Period Premium**") required to

28  be paid to purchase the Extended Reporting Period is $171,914.   The option to purchase the

1    Extended Reporting Period must be exercised within 60 days after termination of coverage under

2    the Policy, *i.e.*, 60 days from January 31, 2017.

3        **9.**    Certain of the Participating Group Trusts and Funds (the "**Contributing Trusts and**

4    **Funds**")[2] have agreed, subject to entry of an order approving this Motion and certain other terms

5    and conditions (including reaching an agreement on allocation of the Extended Reporting Premium

6    among them), to pay the Extended Reporting Period Premium.  The Contributing Trusts and Funds

7    are willing to pay the Extended Reporting Period Premium because they are still reviewing the data

8    obtained from ATPA during the transition to new third party administrators and need additional

9    time within which to determine whether they possess claims against ATPA for which there may be

10    coverage under the Policy.[3]    The Trustee would not purchase the Extended Reporting Period in the

11    event the Extended Reporting Period Premium is not paid by the Contributing Trusts and Funds.

12    The Contributing Trusts and Funds have also agreed to reimburse the Trustee for his reasonable

13    attorneys' fees and expenses incurred to prosecute this Motion.

**C.**

14

15    **THE COURT SHOULD AUTHORIZE THE TRUSTEE TO PURCHASE**
**THE EXTENDED REPORTING PERIOD AS BEING**
16    **IN THE BEST INTERESTS OF THE ESTATE AND ITS CONSTITUENTS**

17

18        Bankruptcy Code Section 363(b) permits a trustee to enter into transactions outside the

19    ordinary course of business with court approval.  Courts have established that a trustee may enter

20    into transactions outside the ordinary course of business in their reasonable business judgment. *See*

21    *generally* 3 *Collier on Bankruptcy* ¶ 363.02[4] (16th ed. 2013) at p. 363-18—363-19. And courts

22    afford broad deference to the trustee's (or debtor in possession's) reasonable business judgment.

23    *Bennett v. Williams*, 892 F.2d. 822, 824 (9th Cir. 1989) (". . . we are deferential to the business

24

25

26    ---
[2] The Contributing Trusts and Funds are: California Service Employees Health and Welfare Trust Fund; San Francisco
Culinary, Bartenders and Service Employees Pension Fund; San Francisco Culinary, Bartenders and Service Employees
Welfare Fund; San Francisco Culinary, Bartenders and Service Employees Legal Services Fund; San Francisco Hotel-
27    Restaurant Labor Management Education Fund; Hotel and Restaurant Employees Health and Welfare Fund; and East
Bay Restaurant and Tavern Retirement Fund.
28    [3] Certain of the Participating Group Trusts and Funds submitted claims to the insured for coverage under the Policy
during the policy period and filed corresponding proofs of claim in these Cases.

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD

1    management decisions of a bankruptcy trustee . . .").

2        The Trustee respectfully submits that the Court should authorize the Trustee to purchase the

3    Extended Reporting Period as being a reasonable exercise of the Trustee's business judgment and

4    in the estates' best interests.  The Extended Reporting Period would be obtained at no cost to the

5    Debtors' estates.  Under the Policy, the insurer will pay covered losses "on behalf of" the Debtors

6    to the claimant suffering the loss rather than to the Debtors.  Nevertheless, the Trustee's purchase of

7    the Extended Reporting Period could reduce or eliminate claims submitted against the Debtors'

8    estates to the extent that professional liability claims against the Debtors are submitted to the

9    insurer under the Policy during the Extended Reporting Period and the insurer pays such claims on

10    behalf of the Debtors as required under the Policy.[4]

11    **D.**

12    **CONCLUSION**

13        Based on the foregoing, the Trustee respectfully requests the Court enter an order

14    authorizing him to purchase the Extended Reporting Period, and for such other relief as is just and

15    proper.

16    Dated: March 9, 2017         DANNING, GILL, DIAMOND & KOLLITZ, LLP

17

18                        By: _____

19                        WALTER K. OETZELL
                    Attorneys for Richard K Diamond, as Chapter 7

20                        Trustee

21

22

23

24

25

26

27

28        [4] Counsel for CAMOFI Master LDC and CAMHZN Master LDC (together, the "**CAM Lenders**"), secured creditors of the Debtors, has agreed that the CAM Lenders do not assert any interest in proceeds of the Policy.

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD

## DECLARATION OF MARTIN G. BUNIN

I, Martin G. Bunin, declare and state as follows:

1.      I am over eighteen years of age, and I have personal knowledge of the facts in this declaration and, if called as a witness, could testify competently that the facts stated in this declaration are true and correct to the best of my knowledge and information.

2.      I am a partner with the law firm of Farrell Fritz, P.C., counsel for the Contributing Trusts and Funds, and am admitted Pro Hac Vice in this matter. I make this declaration in support of the Trustee's Motion For Authority To Purchase Extended Reporting Period Under Debtor's Professional Liability Insurance Policy (the "Motion"). Capitalized terms not defined in this declaration shall have the meaning ascribed to them in the Motion.

3.      The Debtors are insureds under Chubb Professional Portfolio Policy No. 8246-1111 (the "**Policy**"), a copy of which is attached as **Exhibit A** hereto. The Policy includes a Miscellaneous Professional and Technology Services Liability Coverage Part under which the insurer agreed to pay on behalf of the insureds, losses on account of claims first made during the policy period or, if applicable, an extended reporting period, arising from errors and omissions made by the insureds in the course of providing professional services. The maximum aggregate limit of liability under this coverage part is $10 million and each claim is subject a $100,000 self-insured retention.

4.      The policy period of the Policy expired on January 31, 2017. The Policy provides that the insureds have the right to purchase a one year "Extended Reporting Period". If the Extended Reporting Period is purchased, the period during which claims may be reported under the Policy would be extended by one year.

5.      The additional premium (the "**Extended Reporting Period Premium**") required to be paid to purchase the Extended Reporting Period is $171,914. The option to purchase the Extended Reporting Period must be exercised within 60 days after termination of coverage under the Policy, *i.e.*, 60 days from January 31, 2017.

6.      The Contributing Trusts and Funds have agreed, subject to entry of an order approving this Motion and certain other terms and conditions (including reaching an agreement on allocation of the Extended Reporting Premium among them), to pay the Extended Reporting Period Premium. The

1  Contributing Trusts and Funds are willing to pay the Extended Reporting Period Premium because

2  they are still reviewing the data obtained from ATPA during the transition to new third party

3  administrators and need additional time within which to determine whether they possess claims

4  against ATPA for which there may be coverage under the Policy.  The Trustee would not purchase

5  the Extended Reporting Period in the event the Extended Reporting Period Premium is not paid by

6  the Contributing Trusts and Funds.  The Contributing Trusts and Funds have also agreed to reimburse

7  the Trustee for his reasonable attorneys' fees and expenses incurred to prosecute this Motion.

8       I declare under penalty of perjury under the laws of the United States that the foregoing is

9  true and correct to the best of my knowledge, information and belief.

10

11       Executed on March 10, 2017 at New York, New York.

12

13                                                          Martin G. Bunin

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD

EXHIBIT A

CHUBB  **Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, NJ 07059

*Chubb* **Professional Portfolio**$^{SM}$
*General Terms and Conditions*

## GTC DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

**Policy Number:** 8246-1111

NOTICE: THE "CLAIMS MADE LIABILITY COVERAGE PARTS" PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.   THE MEDIAGUARD OCCURRENCE COVERAGE PART PROVIDES OCCURRENCE COVERAGE, WHICH APPLIES TO "CLAIMS" MADE AT ANY TIME THAT ARISE FROM "WRONGFUL ACTS" OCCURRING DURING THE "POLICY PERIOD".

THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS MAY BE REDUCED OR COMPLETELY EXHAUSTED BY "DEFENSE COSTS" AND "SUBPOENA DEFENSE COSTS", AND "DEFENSE COSTS" AND "SUBPOENA DEFENSE COSTS" WILL BE APPLIED AGAINST THE APPLICABLE RETENTION.  IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS", "SUBPOENA DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.

**Item 1.   Parent Organization:**    ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES
Principal Address:         1640 South Loop Road
Alameda, CA 94502

**Item 2.   Policy Period:**
(A)  From:          November 11, 2015
(B)  To:            November 11, 2016
At 12:01 AM local time at the address shown in Item 1.

**Item 3.   Combined Maximum Aggregate Limit of Liability:**

The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts**
shall be: $10,000,000.00

**Item 4.   Coverage applicable to this Policy:**

[X]   Miscellaneous Professional and Technology Services Liability Coverage Part
(for Professional Service Firms)

[ ]   Technology Products and Services Liability Coverage Part
(for Technology Companies)

[X]   MediaGuard Claims Made Liability Coverage Part

[ ]   MediaGuard Occurrence Liability Coverage Part

[ ]   CyberSecurity Coverage Part

14-02-20105D (06/2015)                    1 of 2

EXHIBIT A

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, NJ 07059

*Chubb*®*Professional Portfolio*$^{SM}$
*General Terms and Conditions*

**Item 5.   Extended Reporting Period:**

   (A)  Additional Period:          1 year

   (B)  Additional Premium:      100 % of Annual Premium

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____          _____
                Secretary                                               President


                                                          _____

_____          _____
      February 17, 2016
                  Date                                        Authorized Representative

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**Chubb Professional Portfolio**[SM]
*General Terms and Conditions*

CHUBB

---

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

---

## I.   TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part.  If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.  All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in these General Terms and Conditions shall apply only to these General Terms and Conditions, unless otherwise stated. All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in a Coverage Part, shall apply only to such Coverage Part, unless otherwise stated.

---

## II.   DEFINITIONS

**Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Claims Made Liability Coverage Part** means all **Liability Coverage Parts**, except the MediaGuard Occurrence Liability Coverage Part.

**Covered Subpoena** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Expense** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured Person** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Liability Coverage Part** means:

(A)     the Miscellaneous Professional and Technology Services Liability Coverage Part, Technology Products and Services Liability Coverage Part, MediaGuard Claims Made Liability Coverage Part, and MediaGuard Occurrence Liability Coverage Part; and

(B)     Insuring Clauses (A), Cyber Liability Coverage and (B), Privacy Regulatory Action Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Managing Partner** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Non-Liability Coverage Part** means Insuring Clauses (C), Privacy Notification and Crisis Management Expenses Coverage; (D), Reward Expenses Coverage; and (E), Additional Expenses Coverage, of the CyberSecurity Coverage Part, if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Parent Organization** means the entity named in Item 1 of the GTC Declarations.

---

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

*Chubb Professional Portfolio*[SM]

*General Terms and Conditions*

**Policy Period** means the period of time set forth in Item 2 of the GTC Declarations, subject to any prior termination in accordance with Section IX, Termination of Policy.

**Production** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Related Expenses** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subpoena Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subsidiary** means:

(A)     any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**;

(B)     any entity formed as a partnership while more than fifty percent (50%) of the ownership interests representing the present right to vote for election of or to appoint the management or executive committee members or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; or

(C)     any entity while:

   (1)   exactly fifty percent (50%) of the voting rights representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; and

   (2)   the **Parent Organization**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity.

**Wrongful Act** shall have the meaning ascribed to that term in each applicable Coverage Part.

---

## III.   LIMIT OF LIABILITY

(A)     With respect to the **Liability Coverage Parts**:

   (1)   The Company's maximum aggregate limit of liability for all **Loss** and all **Subpoena Defense Costs** during each **Policy Period** under all **Liability Coverage Parts** of this Policy, combined, shall be the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations.   However, any **Loss** or **Subpoena Defense Costs** paid under any **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of such Coverage Part.

   (2)   **Defense Costs** and **Subpoena Defense Costs** are part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of each **Liability Coverage Part** and payment by the Company of **Defense Costs** and **Subpoena Defense Costs** shall reduce and may exhaust such Limits of Liability.

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**Chubb Professional Portfolio**SM
*General Terms and Conditions*

(B)   With respect to any **Non-Liability Coverage Part**, the Company's maximum liability shall be the Limits of Liability set forth in the Declarations applicable to such **Non-Liability Coverage Part**.

(C)   If the **Policy Period** is less than or greater than one year, then the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations and any applicable Limit of Liability in any Coverage Part shall apply to the entire **Policy Period**.

## IV.   RELATED CLAIMS AND RELATED EXPENSES

(A)   With respect to the **Claims Made Liability Coverage Parts**, all **Related Claims** shall be deemed a single **Claim** made in the **Policy Period** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable Coverage Part (the "Earliest Related Claim"). All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

(B)   With respect to the **Non-Liability Coverage Parts**, all **Related Expenses** shall be deemed a single **Expense** incurred or discovered, as applicable, in the **Policy Period** in which the earliest of such **Related Expenses** is incurred or discovered (the "Earliest Related Expenses"). All **Related Expenses** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Expense.

(C)   With respect to the **Claims Made Liability Coverage Parts** and **Non-Liability Coverage Parts**, if any **Claims** and **Expenses** are based upon, arising from or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, then all such **Claims** and **Expenses** shall be deemed made, incurred or discovered, as applicable, in the earliest of the following:

    (1)   the **Policy Period** in which the earliest of such **Claims** is first made or deemed to have been made; or

    (2)   the **Policy Period** in which the earliest of such **Expenses** is deemed to have been incurred or discovered,

and shall be subject to the applicable Retentions and Limits of Liability of such **Policy Period**.

(D)   With respect to the MediaGuard Occurrence Liability Coverage Part, all **Related Claims** shall be deemed a single **Claim**. All **Related Claims** shall be subject to the same Retention and Limits of Liability.

## V.   EXTENDED REPORTING PERIOD

With respect to the **Claims Made Liability Coverage Parts**:

(A)   If this Policy does not renew or otherwise terminates for a reason other than for failure to pay premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase an Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the GTC Declarations.

(B)   In the event of a Termination of Coverage and upon request from an **Insured**, the Company shall, in its sole discretion, provide a quote for Additional Periods other than as set forth in Item 5, Extended Reporting Period, of the GTC Declarations. Any such additional quote offered shall be subject to such Additional Premium as the Company may require.

(C)   The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

**Chubb Professional Portfolio**[SM]

*General Terms and Conditions*

(D)  This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of the Termination of Coverage.

(E)  If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims**: (1) first made during such Extended Reporting Period; and (2) reported to the Company pursuant to the Reporting section of the applicable Coverage Part, but only to the extent such **Claims** are for **Wrongful Acts** before the effective date of such Termination of Coverage or the date of any conversion of coverage described in Section VI, Changes in Exposure, whichever is earlier. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period** immediately preceding the Extended Reporting Period.

(F)  The entire premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(G)  The limit of liability for the Extended Reporting Period is part of and not in addition to the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations.

## VI.  CHANGES IN EXPOSURE

(A)  **Acquisition of Another Organization**

(1)  If before or during the **Policy Period** an **Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**,

(2)  then coverage shall be provided for such **Subsidiary** and its **Insureds** with respect to any:

(a)  **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** after such acquisition; or

(b)  **Non-Liability Coverage Part**, solely after the effective date of such acquisition subject to Section XII, Liability for Prior Losses, of the CyberSecurity Coverage Part.

(B)  **Cessation of Subsidiaries**

(1)  If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**,

(2)  then with respect to any:

(a)  **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy in accordance with Section VI(C), Conversion of Coverage Under Certain Circumstances, or Section IX, Termination of Policy, whichever occurs first, but only for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary**; or

(b)  **Non-Liability Coverage Part**, such **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Part**.

(C)  **Conversion of Coverage Under Certain Circumstances**

(1)  If during the **Policy Period** any of the following events occur:

(a)  another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of or to appoint directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**;

*Chubb Professional Portfolio*<sup>SM</sup>

**General Terms and Conditions**

    (b)    another entity, person or group of entities or persons acting in concert, acquires the right to vote for the election of or to appoint the **Managing Partner** or the majority of management or executive committee members of the **Parent Organization**, if the **Parent Organization** is a partnership;

    (c)    the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, person or group of entities or persons acting in concert, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

    (d)    the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization,

(2)    then:

    (a)    any applicable coverage under this Policy with respect to:

        (i)    any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such event; or

        (ii)    any **Non-Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Expense** first incurred or discovered, if applicable, prior to such event;

    (b)    the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

    (c)    the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

---

**VII.   SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES**

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)    the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse or domestic partner's status as a spouse or domestic partner, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**; or

(B)    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt,

provided that no coverage afforded by this Section VII shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** spouse, domestic partner, estate, heirs, legal representatives or assigns.

---

**VIII.   NOTICE**

(A)    Notice to the Company of any **Claim**, **Expense**, or circumstances under any Coverage Part shall be deemed notice under the Policy in its entirety.

(B)    All notices to the Company under this Policy of any **Claim**, **Covered Subpoena**, **Expense**, or circumstances under any Coverage Part shall be given in writing to one of the following addresses:

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*[SM]
*General Terms and Conditions*

(1)    specialtyclaims@chubb.com; or

(2)    Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

(C)    All other notices to the Company under this Policy shall be given in writing addressed to:

Attn: Chubb Specialty Insurance Underwriting Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

(D)    Any notice described above shall be effective on the date of receipt by the Company.

## IX.   TERMINATION OF POLICY

(A)    This Policy shall terminate at the earliest of the following times:

(1)    upon receipt by the Company of written notice of termination from the **Parent Organization**, provided that:

(a)    this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section VI(C), Conversion of Coverage Under Certain Circumstances; and

(b)    the MediaGuard Occurrence Liability Coverage Part may not be terminated by the **Parent Organization** after the first publication or broadcast of any stand alone **Production** (if a single, stand alone **Production** is insured only), in which case the portion of the premium for the MediaGuard Occurrence Liability Coverage Part shall become fully earned;

(2)    upon expiration of the **Policy Period** set forth in Item 2 of the GTC Declarations;

(3)    twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

(4)    at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)    Except as stated in subparagraph (A)(1)(b) above, the Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## X.   BANKRUPTCY

Bankruptcy or insolvency of an **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XI.   COORDINATION OF COVERAGE

(A)    If **Loss** on account of any **Claim** is covered under more than one **Liability Coverage Part**, such **Loss** shall be first covered under the MediaGuard Occurrence Liability Coverage Part, if applicable, subject to

its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the MediaGuard Occurrence Liability Coverage Part shall then be covered under the CyberSecurity Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the MediaGuard Occurrence Liability or CyberSecurity Coverage Parts shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

(B)   If **Loss** on account of any **Claim** is covered under the MediaGuard Occurrence Liability Coverage Part and any other **Liability Coverage Part**, and if the **Insured** elects to retain the duty to defend such **Claim** pursuant to Section VII, Defense and Settlement of Claims, Subpoenas and Retraction Demands, of the MediaGuard Occurrence Liability Coverage Part, then the terms of such Section VII as well as the terms of Section VIII(A), Allocation, of the MediaGuard Occurrence Liability Coverage Part shall apply to such **Claim**.

## XII.   VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the

currency of the United States of America. Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

## XIII.   ACTION AGAINST THE COMPANY

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## XIV.   ROLE OF PARENT ORGANIZATION

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of any return premiums that may become due under this Policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period as provided in Section V, Extended Reporting Period, and the giving of notice of **Claim**, **Covered Subpoena**, **Expense**, or circumstances as provided in the Reporting section of the applicable Coverage Part). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## XV.   ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of Chubb & Son, a division of Federal Insurance Company.

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**Chubb Professional Portfolio**<sup>SM</sup>

*General Terms and Conditions*

**XVI.   TERRITORY**

This Policy shall apply anywhere in the world.

**XVII.   HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

**XVIII.   COMPLIANCE WITH TRADE SANCTIONS**

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

# Schedule of Forms

To be attached to and form part of          Company:    Federal Insurance Company
Policy No.   8246-1111

Issued to:    ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES


Chubb Professional Portfolio General Terms and Conditions FED

14-02-20709 (6/15 ed.)

14-02-20710 (6/15 ed.)

14-02-21443 (6/15 ed.)

Chubb Professional Portfolio Miscellaneous Professional and Technology Services Liability Coverage Part FED

14-02-20711 (6/15 ed.)

14-02-20983 (6/15 ed.)

14-02-21503 (6/15 ed.)

Chubb Professional Portfolio MediaGuard Claims Made Liability Coverage Part FED

14-02-20713 (6/15 ed.)

14-02-20991 (6/15 ed.)

Form 14-02-0854 (Ed. 04-01)

**ENDORSEMENT/RIDER**

Coverage Section: Chubb Professional Portfolio General Terms and Conditions FED

Effective date of
this endorsement/rider: November 11, 2015

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8246-1111

Issued to: ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

## CALIFORNIA PREMIUM ENDORSEMENT

In consideration of the premium charged, it is agreed that in compliance with the ruling of the Commissioner of Insurance of the State of California and the opinion of the Attorney-General of that state requiring that the premium for all bonds or policies be endorsed thereon, the basic premium charged for the attached bond/policy for the period

From:   November 11, 2015

To:   November 11, 2016

Is:

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of California.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Chubb Professional Portfolio General Terms and Conditions FED

Effective date of
this endorsement: November 11, 2015

Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8246-1111

Issued to:  ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

---

## CALIFORNIA AMENDATORY ENDORSEMENT
## TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1. Section IX, Termination of Policy, is amended by adding the following at the end of paragraph (A)(2):

   provided that, non-renewal by the Company is effective only if the Company mails or delivers notice of non-renewal to the **Parent Organization** and to the agent of record, if any, at the mailing address shown on this Policy at least sixty (60) but not more than one hundred twenty (120) days before the expiration of the **Policy Period**; or

2. Section IX, Termination of Policy, is amended further to add the following paragraphs at the end of the section:

   No notice of nonrenewal by the Company is required in any of the following situations:

   (1) the transfer of, or renewal of, this Policy without a change in its terms or conditions or the rate on which the premium is based to another insurer within the Chubb Group of Insurance Companies;

   (2) if this Policy is extended for ninety (90) days or less, provided that the Company has given notice of nonrenewal before such extension;

   (3) if the **Parent Organization** has obtained replacement coverage or has agreed, in writing, within sixty (60) days of the termination of this Policy, to obtain such coverage;

   (4) if the **Parent Organization** requests a change in the terms or conditions or risks covered by this Policy within sixty (60) days before the end of the **Policy Period**;

   (5) if this Policy is for a period of no more than sixty (60) days and the Company notifies the **Parent Organization** at the time of issuance that it may not be renewed; or

   (6) if the Company has made a written offer to the **Parent Organization**, within the required time period for doing so under this Policy, to renew this Policy under changed terms or conditions or at a changed premium rate.

   The Company may condition renewal of this Policy upon a reduction in limits, elimination of coverages, increase in retentions or increase of more than twenty-five percent (25%) in the rate upon which the premium is based, by mailing or delivering notice of such renewal change(s) to the **Parent Organization**

14-02-20710 (06/2015)                    Page 1

at the mailing address shown on this Policy and to the agent of record, if any, at least sixty (60) but not more than one hundred twenty (120) days before the expiration of the **Policy Period**.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes and intent of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supercede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of California.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-20710 (06/2015)                    Page 2

**ENDORSEMENT/RIDER**

Coverage Section:  Chubb Professional Portfolio General Terms and Conditions FED

Effective date of
this endorsement/rider: November 11, 2015          Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8246-1111

Issued to:  ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

AMEND DEFINITION OF ORGANIZATION ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Organization** in Section II, Definitions, is amended to include United  Benefits & Pension Services, Inc..

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-21443 (06/2015)                    Page 1

*Chubb Professional Portfolio*<sup>SM</sup>

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Miscellaneous Professional and Technology
Services Liability Coverage Part*

| | |
|---|---|
| **MPTS DECLARATIONS** | **FEDERAL INSURANCE COMPANY**<br>A stock insurance company, incorporated under the laws<br>of Indiana, herein called the Company<br><br>Capital Center, 251 North Illinois, Suite 1100<br>Indianapolis, IN  46204-1927 |

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.**

**THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS MAY BE REDUCED OR COMPLETELY EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.   READ THE ENTIRE POLICY CAREFULLY.**

Item 1.    **Parent Organization:**    ASSOCIATED THIRD PARTY ADMINISTRATORS AND
                                        ITS SUBSIDIARIES

Item 2.    **Maximum Aggregate Limit of Liability for this Coverage Part**:    $10,000,000.00

Item 3.    **Retention:**    $100,000.00 each **Claim**

Item 4.    **Retroactive Date:**    November 11, 1991

Item 5.    **Professional Services:**
           Benefit Plan Administration Services and web-site design services

**CHUBB**
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb* **Professional Portfolio**[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.   INSURING CLAUSE

**Miscellaneous Professional and Technology Services Liability Coverage**

The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** on or after the Retroactive Date set forth in Item 4 of the MPTS Declarations.

## II.   DEFINITIONS

For purposes of this Coverage Part:

**Application** means:

(A)   any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)   any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means any:

(A)   written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(B)   civil proceeding commenced by the service of a complaint or a similar pleading; or

(C)   arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document;

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(D)   written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Subsections (A) through (C) above.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization** including a part-time, seasonal, leased or temporary employee, intern or volunteer. **Employee** shall not include any independent contractor.

**Environmental Agents** means any:

(A)   bacteria;

(B)   mildew, mold, or other fungi;

(C)   other microorganisms;

**CHUBB**

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb Professional Portfolio*<sup>SM</sup>

*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

(D)  mycotoxins, spores, or other by-products of Subsections (A), (B) or (C) above;

(E)  viruses or other pathogens (whether or not a microorganism); or

(F)  colony or group of any of the foregoing.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), as amended; any similar provisions of any statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)  a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)  a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America;

(C)  a partner of any **Organization** formed as a partnership in the United States of America; or

(D)  a holder of an equivalent position to those described in Subsections (A) through (C) above in any **Organization** incorporated, formed or organized anywhere in the world.

**First Inception Date** means the inception date of the first claims made policy or coverage part insuring miscellaneous errors and omissions issued by the Company and continually renewed by the Company until the inception date of this current Policy and of which this Policy is a direct renewal or replacement.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any **Executive** or **Employee** of an **Organization** acting in his or her capacity as such.

**Liquidated Damages** means a sum of money stipulated by the parties to a contract as the amount of damages to be recovered for a breach of such contract.

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)  compensatory damages;

(B)  punitive, exemplary, or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)  judgments, including pre-judgment and post-judgment interest;

(D)  settlements; and

(E)  **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)  cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)  amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)  tax, fine or penalty imposed by law against an **Insured**; except as provided in Subsection (B) above with respect to punitive, exemplary or multiplied damages;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*<sup>SM</sup>
*Miscellaneous Professional and Technology
Services Liability Coverage Part*

(4)    amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

(5)    **Liquidated Damages**;

(6)    consideration owed or paid in connection with any **Insured's** goods, products or services, including any royalties, restitution, reduction, disgorgement or return of any payment, charges or fees;

(7)    cost of correcting, re-performing or completing any **Professional Services**, or any costs to satisfy any warranty or other obligation assumed by or on behalf of an **Insured** in connection with any **Professional Services**; or

(8)    cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Managing Partner** means any natural person who is chosen or appointed to manage or direct any **Organization** that is formed as a partnership; provided that if no such individual exists, **Managing Partner** means each and every member of the management or executive committee (or similar body responsible for management) of any **Organization** that is formed as a partnership.

**Personal Injury** means:

(A)    libel, slander, product disparagement, trade libel or other form of defamation;

(B)    invasion or infringement of the right of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness;

(C)    false arrest, detention or imprisonment; or

(D)    wrongful entry or eviction, or other invasion of the right of private occupancy.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Professional Services** means:

(A)    services which are performed by or on behalf of an **Insured** for others for a fee and set forth in Item 5 of the MPTS Declarations; and

(B)    **Technology Services**.

**Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Advisors Act of 1940, the Investment Company Act of 1940, any state "blue sky" securities law, or any other federal, state, local securities law anywhere in the world or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

**Technology Product** means any:

(A)    communication, computer, data security, electronic, information, Internet, network or website:

(1)    equipment or parts; or

(2)    programs or systems; and

(B)    software, data or other information in electronic form.

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

*Chubb* **Professional Portfolio**[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

---

**Technology Services** means the following services performed by or on behalf of an **Insured** for others for a fee in connection with any **Technology Product**:

(A)     technology consulting services;

(B)     information systems or network analysis, design, programming or integration;

(C)     software design, distribution, servicing, installation and maintenance;

(D)     website design, programming or maintenance;

(E)     training; and

(F)     database design and the caching, collecting, compiling, processing, mining, recording or analysis of data.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, breach of duty or **Personal Injury** committed, attempted, or allegedly committed or attempted solely in the performance of or failure to perform **Professional Services**.

---

### III.    EXCLUSIONS

The Company shall not be liable for **Loss** on account of any **Claim**:

(A)     Prior Notice
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(B)     Pending or Prior Proceedings
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(C)     Bodily Injury or Property Damage
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (C) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress resulting from **Personal Injury**;

(D)     Pollution
based upon, arising from or in consequence of any:

(1)     discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

(2)     treatment, removal or disposal of any **Pollutants**; or

(3)     regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**;

(E)     ERISA
based upon, arising from or in consequence of any violation of the responsibilities, obligations or duties imposed by **ERISA** with respect to employee, pension or welfare benefit plans or programs operated or sponsored by an **Organization**, or an entity which owns or controls an **Organization**, for the benefit of **Insured Persons**;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

***Chubb Professional Portfolio***<sup>SM</sup>
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

(F)  <u>Employment Practices</u>
brought by or on behalf of any past, present or prospective employee, based upon, arising from or in consequence of any employment relationship or the nature, terms or conditions of employment, including claims of workplace torts, wrongful termination, dismissal or discharge, or any employment-related discrimination, harassment, breach of contract, or defamation;

(G)  <u>Contract</u>
for any liability of an **Insured** under any oral or written contract or agreement, provided that this Exclusion (G) shall not apply to **Loss** to the extent that an **Insured** would have been liable in the absence of such contract or agreement;

(H)  <u>Prior Knowledge</u>
based upon, arising from or in consequence of any **Wrongful Act** first committed before the **First Inception Date**, if, on or before such date, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or could result in a **Claim** against any **Insured**, provided that this Exclusion (H) shall only apply if coverage is afforded for **Wrongful Acts** first committed before the **First Inception Date**, as such coverage is determined by the Retroactive Date set forth in Item 4 of the MPTS Declarations;

(I)  <u>Environmental Agents</u>
based upon, arising from or in consequence of any:

   (1)  **Environmental Agents;**

   (2)  request, demand, order or regulatory or statutory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **Environmental Agents**; or

   (3)  action or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any **Environmental Agents;**

(J)  <u>Insured v. Insured</u>
brought or maintained by or on behalf of any **Insured;**

(K)  <u>Professional Services for Insureds and Affiliates</u>
based upon, arising from or in consequence of the performance of or failure to perform **Professional Services** for any:

   (1)  **Insured;**

   (2)  entity which is owned or controlled by, or is under common ownership or control with, any **Insured;**

   (3)  natural person or entity which owns or controls any entity included within the definition of **Insured;** or

   (4)  entity of which any **Insured** is a director, officer, partner or principal shareholder, a manager or member of the Board of Managers, or a member of the Advisory Board;

(L)  <u>Securities</u>
based upon, arising from or in consequence of any violation of **Securities Laws;**

(M)  <u>Antitrust or Unfair Trade Practices</u>
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, interference with economic relations (including interference with contractual relations or with prospective advantage), unfair competition, unfair business or unfair trade practices, or any violation of the Federal Trade

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**Chubb Professional Portfolio**SM
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing, restraint of trade, unfair competition, unfair business or unfair trade practices, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(N)   Intellectual Property
based upon, arising from or in consequence of any infringement of copyright, patent, trademark, trade name, trade dress or service mark; any misappropriation of ideas, trade secrets or other intellectual property rights; any false patent marking; or any violation of a federal, state, local or foreign intellectual property law, or a rule or regulation promulgated under such intellectual property law;

(O)   Unsolicited Communications
based upon, arising from or in consequence of any violation of:

(1)   the United States of America CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(2)   the United States of America Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; or

(3)   any other law, ordinance, regulation or statute used to impose liability in connection with any unsolicited communication, distribution, publication, sending or transmission;

(P)   Governmental, Regulatory or Administrative Entity
brought or maintained by or on behalf of any governmental or quasi-governmental entity, regulatory or administrative agency or authority; provided that this Exclusion (P) shall not apply to **Loss** if such entity, agency or authority brings the **Claim** solely in its capacity as the client or customer of any **Insured** for **Professional Services**;

(Q)   Fees, Charges or Cost Over-runs
solely involving any **Insured's** fees, charges or cost over-runs;

(R)   Guaranty of Costs or Value
based upon, arising from or in consequence of any guaranty, promise or warranty, either express or implied, whether oral or written, with respect to:

(1)   any costs or cost savings; or

(2)   the future value of any real, personal or intellectual property;

(S)   Investment Performance
based upon, arising from or in consequence of any **Insured's** advice about, promise or guarantee of the future performance or value of investments, or rate of return or interest; or any **Loss** resulting from fluctuation in the value of any investment; or any failure of investments to perform as expected or desired;

(T)   Disappearance of Money and Commingling
for any loss of money or securities owned or held by any **Insured**, or for which any **Insured** is legally liable, due to disappearance, theft, injury or damage thereto; or any improper use or commingling of any funds or monies;

(U)   Maintenance of Licenses
based upon, arising from or in consequence of any decision by any **Insured**:

(1)   not to effect, maintain, procure or secure; or

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

***Chubb* Professional Portfolio**<sup>SM</sup>

*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

(2)   to cancel, let lapse, modify, not renew, revoke, suspend or otherwise impair,

in whole or in part at any time, any lease, license, order, permit or other contract for any **Technology Product** that any **Insured** is obligated to effect, maintain, procure or secure;

(V)   Delay in Delivery or Performance
based upon, arising from, in consequence of any delay in delivery of or failure to deliver any **Technology Product** or delay in performance of, or failure to begin any analysis, design, programming, integration, installation, maintenance, repair or support services in connection with any **Technology Product**;

(W)   Ceasing Support
based upon, arising from or in consequence of any decision by any **Insured**:

(1)   not to provide or support; or

(2)   to cease to provide or support,

in whole or in part at any time, any **Technology Product** that any **Insured** is obligated to provide or support;

(X)   Adjustment, Inspection, Recall, Repair or Replacement
for any adjustment, disposal, inspection, recall, removal, repair, replacement or withdrawal of any:

(1)   **Technology Product**; or

(2)   property containing or incorporating any **Technology Product** designed, programmed, integrated, distributed, installed, maintained, repaired or serviced by or on behalf of an **Insured**,

regardless of whether any such adjustment, disposal, inspection, recall, removal, repair, replacement or withdrawal is performed by any **Insured** or others;

(Y)   Third Party Product Failures or Defects
based upon, arising from or in consequence of any defect in any product manufactured, created or installed by any person or entity other than an **Insured**, provided that this Exclusion (Y) shall not apply if such person or entity manufactured, created or installed such product while performing **Professional Services**: (1) on behalf of or at the direction of the **Insured**; and (2) in accordance with a written contract or agreement with the **Insured**;

(Z)   False Advertising
based upon, arising from or in consequence of false advertising, misrepresentation in advertising, or any unfair or deceptive trade practices, with respect to the advertising or sale of any **Insured's** own goods, products, publications or services; or any inaccurate, inadequate or incomplete description of the price of goods, products or services disseminated by, on behalf of, or with the consent of any **Insured**, or any failure of such goods, products or services to conform with advertised quality or performance;

(AA)   Unauthorized Network Access and Unlawful Collection
based upon, arising from or in consequence of any:

(1)   unauthorized or exceeded authorized access to, use of or alteration of, any computer program, software, computer, computer system or any input, output, processing, storage or communication devices that can be connected thereto; or

(2)   unauthorized or unlawful collection, use or dissemination of Internet user information;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**Chubb Professional Portfolio**<sup>SM</sup>

*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

---

(BB)   <u>Nuclear</u>
based upon, arising from or in consequence of any radioactive, toxic, explosive or other hazardous properties of any nuclear material, nuclear assembly, or nuclear component thereof; or

(CC)   <u>Conduct</u>
based upon, arising from or in consequence of:

  (1)   any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding brought by or against the Company) establishes such an act or omission or violation; or

  (2)   an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding brought by or against the Company) establishes the gaining of such profit, remuneration or advantage;

  provided that:

  (a)   no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

  (b)   any conduct pertaining to any past, present, or future chief financial officer, chief executive officer, chief operating officer, in-house general counsel, manager of the Board of Managers (or any equivalent position to any of the foregoing), or **Managing Partner** of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

---

## IV.   REPORTING

(A)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, president, chief financial officer, chief information officer, in-house general counsel, risk manager, **Managing Partner**, or any natural person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

  (1)   if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

  (2)   the expiration of the Extended Reporting Period, if applicable,

  provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(B)   If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Period** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, president, chief financial officer, chief information officer, in-house general counsel, risk manager, **Managing Partner**, or any natural person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

---

*Chubb Professional Portfolio*<sup>SM</sup>

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Miscellaneous Professional and Technology
Services Liability Coverage Part*

CHUBB

(C)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A) or (B) above a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

## V.   RETENTION

(A)   The Company's liability under this Coverage Part shall apply only to that part of covered **Loss** on account of each **Claim** which is excess of the applicable Retention set forth in Item 3 of the MPTS Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk. In the event that any **Insured** is unwilling or unable to bear the Retention, it shall be the obligation of the **Parent Organization** to bear such Retention uninsured and at its own risk.

(B)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)   **Claims** shall be subject to the Retention applicable to the **Policy Period** during which such **Claims** are first made or deemed to have been made.

## VI.   DEFENSE AND SETTLEMENT

(A)   The Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(C)   No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(D)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the MPTS Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations has been exhausted by the payment of **Loss** and the applicable premium shall be deemed fully earned.

(E)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees to do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(F)   The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion III(CC), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

## VII.   ALLOCATION

033

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb Professional Portfolio*SM
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

CHUBB

If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be considered covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Subsection X(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**:  all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII.   OTHER INSURANCE

If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

## IX.   SUBROGATION

(A)   In the event of any payment under this Coverage Part, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery. As a condition precedent to the Company's payment under this Coverage Part, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of such documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

(B)   It is understood and agreed that the Company shall have no rights of subrogation against any **Insured** under this Coverage Part and that an **Organization** may, on behalf of the Company, waive the Company's subrogation rights against any third party under this Coverage Part, provided that such waiver of subrogation is executed in writing prior to any **Wrongful Act**.

## X.   REPRESENTATIONS AND SEVERABILITY

(A)   In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.  Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)   The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)   However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

CHUBB    Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb Professional Portfolio*[SM]
*Miscellaneous Professional and Technology*
*Services Liability Coverage Part*

    (1)   any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations); or

    (2)   any **Organization** if any past or present chief financial officer, chief executive officer, in-house general counsel, manager of the Board of Managers (or any equivalent position to any of the foregoing), or **Managing Partner** of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)   The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section: Chubb Professional Portfolio Miscellaneous Professional and Technology Services Liability Coverage Part FED

Effective date of
this endorsement: November 11, 2015

Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8246-1111

Issued to:  ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

---

### CALIFORNIA AMENDATORY ENDORSEMENT
### TO THE MISCELLANEOUS PROFESSIONAL AND
### TECHNOLOGY SERVICES LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that:

1.  Subparagraph (B) in the definition of **Loss** as set forth in Section II, Definitions, is deleted and replaced with the following:

    (B)  punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages; and provided further that, if such jurisdiction is the State of California, then **Loss** does not include punitive, exemplary or multiplied damages;

The Policy will be deemed to have been amended to the extent necessary to effect the purposes and intent of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supercede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of California.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**CHUBB** Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

**MGCM DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.**

**THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS MAY BE REDUCED OR COMPLETELY EXHAUSTED BY "DEFENSE COSTS" AND "SUBPOENA DEFENSE COSTS," AND "DEFENSE COSTS" AND "SUBPOENA DEFENSE COSTS" WILL BE APPLIED AGAINST THE APPLICABLE RETENTION. THE COVERAGE AFFORDED UNDER THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED UNDER OTHER POLICIES. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**  **Parent Organization:** ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

**Item 2.**  **Maximum Aggregate Limit of Liability for this Coverage Part:** $10,000,000.00

**Item 3.**  **Limits of Liability:**
 (A) Insuring Clause (A)
  Media Liability Coverage: $5,000,000.00 Each **Claim**
 (B) Insuring Clause (B)  Not Covered
  Subpoena Defense Coverage: Each **Covered Subpoena**

**Item 4.**  **Retention:**
 (A) Insuring Clause (A)
  Media Liability Coverage: $5,000.00 Each **Claim**
 (B) Insuring Clause (B)  Not Covered
  Subpoena Defense Coverage: Each **Covered Subpoena**

**Item 5.**  **Covered Media:**
 TBD

**Item 6.**  **Internet Site(s):**
 N/A

**Item 7.**  **Production(s):**
 N/A

**Item 8.**  **Retroactive Date:** November 11, 1991

14-02-20108D (06/2015)                    1 of 2

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

***Chubb Professional Portfolio***<sup>SM</sup>

*MediaGuard Claims Made*
*Liability Coverage Part*

CHUBB

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

***Chubb Professional Portfolio*** SM
***MediaGuard Claims Made***
***Liability Coverage Part***

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.    INSURING CLAUSES

### Insuring Clause (A): Media Liability Coverage

(A)    The Company shall pay, on behalf of an **Insured, Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** on or after the Retroactive Date set forth in Item 8 of the MGCM Declarations.

### Insuring Clause (B): Subpoena Defense Coverage

(B)    The Company shall pay, on behalf of an **Insured, Subpoena Defense Costs** on account of a **Covered Subpoena** first served on the **Insured** during the **Policy Period**.

## II.    DEFINITIONS

For purposes of this Coverage Part:

**Activity(ies)** means **Internet Activities, Media Activities** and **Production Activities**.

**Application** means:

(A)    any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)    any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means any:

(A)    written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(B)    civil proceeding commenced by the service of a complaint or a similar pleading; or

(C)    arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(D)    written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Subsections (A) through (C) above; or

(E)    written demand first received by an **Insured** for the retraction of **Matter** published, disseminated or released by an **Insured**.

**Confidential Source** shall mean a natural person or entity that provides information on a confidential basis to an **Insured** as a source for newsgathering, provided the **Insured** has agreed to keep confidential such natural person's or entity's identity.

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

***Chubb Professional Portfolio*** SM
*MediaGuard Claims Made*
*Liability Coverage Part*

**Covered Media** means the publications, programs, broadcast or cable stations or other communications set forth in Item 5 of the MGCM Declarations which were created or acquired on or prior to the inception date set forth in Item 2(A) of the GTC Declarations, including any special editions of, or supplements to such media.

**Covered Subpoena** means a subpoena seeking documents, testimony, information, or other **Matter** in connection with a **Wrongful Act** in the course of an **Insured's** reporting of events or happenings by the **Insured's** news media organization.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, overhead or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds. **Defense Costs** also includes reasonable legal fees incurred to prosecute a copyright or trademark declaratory relief action ("declaratory relief fees"), provided that the Company's obligation to pay declaratory relief fees: (A) shall commence only after the **Insured's** receipt of a civil proceeding alleging copyright or trademark infringement that is otherwise covered by this Coverage Part; and (B) shall continue so long as such civil proceeding is continuously maintained against the **Insured**.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization** including a part-time, seasonal, leased or temporary employee, intern or volunteer. **Employee** shall not include any independent contractor.

**Environmental Agents** means any:

(A)   bacteria;

(B)   mildew, mold, or other fungi;

(C)   other microorganisms;

(D)   mycotoxins, spores, or other by-products of Subsections (A), (B) or (C) above;

(E)   viruses or other pathogens (whether or not a microorganism); or

(F)   colony or group of any of the foregoing.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), as amended; any similar provisions of any statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)   a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)   a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America;

(C)   a partner of any **Organization** formed as a partnership in the United States of America; or

(D)   a holder of an equivalent position to those described in Subsections (A) through (C) above in any **Organization** incorporated, formed or organized anywhere in the world.

**First Inception Date** means the inception date of the first claims made policy or coverage part insuring media professional liability issued by the Company and continually renewed by the Company until the inception date of this current Policy and of which this Policy is a direct renewal or replacement.

**Insured** means any **Organization** and any **Insured Person**.

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*<sup>SM</sup>
*MediaGuard Claims Made*
*Liability Coverage Part*

**Insured Person** means any:

(A)  **Executive** or **Employee** of an **Organization** acting in his or her capacity as such;

(B)  natural person or entity that disseminates **Matter** where the **Organization** has entered into a written, oral or implied-in-fact indemnification or hold harmless agreement with such natural person or entity regarding **Claims** arising out of the dissemination of such **Matter**, provided that coverage is not provided for such natural person or entity for any **Matter** created, modified or furnished by such natural person or entity; or

(C)  natural person or entity that is an agent or independent contractor of an **Organization**, including stringers, freelancers and photographers, but only with respect to **Claims** arising out of **Wrongful Acts** committed for or at the direction of the **Organization**, and only if and to the extent that the **Organization**, after evaluating the merits of the **Claim**:

   (1)  has agreed in writing to include such agent or independent contractor as an **Insured** under this Coverage Part; and

   (2)  provides the Company with written notice of such agreement within sixty (60) days of an **Insured** first becoming aware of such **Claim**.

**Internet Activities** means display or other use of **Matter**, including advertising, on an **Internet Site** which was created on or prior to the inception date set forth in Item 2(A) of the GTC Declarations.

**Internet Site(s)** means any internet site or social media platform set forth in Item 6 of the MGCM Declarations.

**Liquidated Damages** means a sum of money stipulated by the parties to a contract as the amount of damages to be recovered for a breach of such contract.

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)  compensatory damages;

(B)  punitive, exemplary, or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)  judgments, including pre-judgment and post-judgment interest;

(D)  settlements; and

(E)  **Defense Costs,**

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)  cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)  amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)  tax, fine or penalty imposed by law against an **Insured** including those imposed by any federal, state or local governmental body or by ASCAP, SESAC, BMI, or other similar licensing organizations anywhere in the world; except as provided in Subsection (B) above with respect to punitive, exemplary or multiplied damages;

(4)  amount incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

(5)   **Liquidated Damages;**

(6)   consideration owed or paid in connection with any **Insured's** goods, products or services, including any royalties, restitution, reduction, disgorgement or return of any payment, charges or fees;

(7)   **Insured's** production costs, lost profits, or cost of correcting, recalling, reproducing, or reprinting of **Matter**, including the costs of any services in connection therewith; or

(8)   cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Managing Partner** means any natural person who is chosen or appointed to manage or direct any **Organization** that is formed as a partnership; provided that if no such individual exists, **Managing Partner** means each and every member of the management or executive committee (or similar body responsible for management) of any **Organization** that is formed as a partnership.

**Matter** means the content of any communication of any kind whatsoever, regardless of the nature or form of such **Matter** or the medium by which such **Matter** is communicated, including language, data, facts, fiction, music, photographs, images, advertisements, artistic expression, or visual or graphical materials.

**Media Activities** means:

(A)   the gathering, recording, collection, writing, editing, publication, dissemination, exhibition, broadcast or release of **Matter** in connection with the **Covered Media**; and

(B)   the development, creation, production, placement or dissemination of **Matter** consisting of or relating to advertising, publicizing, promotion or sale of the goods or services of an **Insured** or others where such **Matter** is in, or directly relating to, the **Covered Media**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Production(s)** means any production set forth in Item 7 of the MGCM Declarations.

**Production Activities** means:

(A)   the preparation, production, publication, dissemination, release, broadcast, telecast, exhibition, sale, licensing or distribution of **Productions;**

(B)   the development, creation, production, placement, or dissemination of **Matter** consisting of or relating to advertising, publicizing, promotion or sale of **Productions;** and

(C)   the licensing to any third party of any logo, symbol, trademark or other intellectual property for use in connection with the sale of goods or services directly relating to **Productions**.

**Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Advisors Act of 1940, the Investment Company Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law anywhere in the world or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

**Subpoena Defense Costs** means reasonable legal fees and expenses incurred in connection with a **Covered Subpoena** including:

(A)   seeking to quash or modify a **Covered Subpoena** or in opposing any motion to enforce a **Covered Subpoena** on any appropriate ground, including grounds of reporter's privilege or shield law or other

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*<sup>SM</sup>
**MediaGuard Claims Made
Liability Coverage Part**

applicable constitutional, statutory or common-law privilege relating to the protection of newsgathering activities; and

(B)  representation of an **Insured** in connection with a **Covered Subpoena** during the document production, witness preparation, and giving of testimony in connection with such subpoena.

**Subpoena Defense Costs** does not include any remuneration, salaries, wages, tips, overhead, or expenses of any **Insured**, except with the prior written consent of the Company.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty arising directly out of an **Insured's Activities**, including but not limited to, any actual or alleged:

(A)  invasion or infringement of the right of privacy or publicity, including the torts of intrusion upon seclusion, publication of private facts, false light, or misappropriation of name or likeness;

(B)  libel, slander, or any other form of defamation or harm to the character or reputation of any person or entity, including product disparagement or trade libel;

(C)  outrage, infliction of emotional distress or prima facie tort;

(D)  false arrest, detention or imprisonment, harassment, trespass, wrongful entry or eviction, eavesdropping, or other invasion of the right of private occupancy;

(E)  copyright infringement or misappropriation of property rights, information or ideas or dilution or infringement of title, slogan, trademark, trade name, service mark, or service name; or

(F)  negligence in connection with the content of **Matter**, including alleged harm to a natural person or entity who acted or failed to act in reliance upon such **Matter**.

III. **EXCLUSIONS**

The Company shall not be liable for **Loss** on account of any **Claim**:

(A)  <u>Prior Notice</u>
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(B)  <u>Pending or Prior Proceedings</u>
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(C)  <u>Bodily Injury or Property Damage</u>
for bodily injury (except mental anguish, humiliation, and emotional distress), sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (C) shall not apply to bodily injury or property damage resulting from a **Claim** of negligence as described in Subsection (F) in the definition of **Wrongful Act**, except as provided in Exclusion (T), Product Warranty or Guarantee;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

(D)   Pollution
      based upon, arising from or in consequence of any:

    (1)   discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

    (2)   treatment, removal or disposal of any **Pollutants**; or

    (3)   regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**;

(E)   ERISA
      for any violation of the responsibilities, obligations or duties imposed by **ERISA**;

(F)   Employment Practices
      brought by or on behalf of any past, present or prospective employee, based upon, arising from or in consequence of any employment relationship or the nature, terms or conditions of employment, including claims of workplace torts, wrongful termination, dismissal or discharge, or any employment-related discrimination, harassment, breach of contract, or defamation; provided that this Exclusion (F) shall not apply to any **Claim** that involves a dispute over the ownership or exercise of rights in any **Matter** provided by any such employee;

(G)   Contract
      for any breach of any express or implied contract, agreement, warranty or guarantee, provided that this Exclusion (G) shall not apply to any:

    (1)   **Claim** for liability which an **Insured** would have incurred in the absence of such contract, agreement, warranty or guarantee;

    (2)   **Claim** alleging breach of a written, oral or implied-in-fact indemnification or hold harmless agreement between an **Organization** and an **Insured Person**, as described in Subsection (B) of the definition of **Insured Person**;

    (3)   **Claim** alleging breach of any express or implied contract or agreement between an **Insured** and a **Confidential Source** of **Matter** supplied to the **Insured**, regarding the confidentiality to be afforded to such **Confidential Source** or such **Matter**;

    (4)   **Claim** alleging breach of any express or implied contract or agreement between an **Insured** and a natural person or entity that provides **Matter** to the **Insured**, regarding the ownership or exercise of any copyrights in such **Matter**;

    (5)   alleged failure to attribute authorship or provide credit under any agreement to which an **Insured** is a party; or

    (6)   alleged misappropriation of ideas under implied contract;

(H)   Prior Knowledge
      based upon, arising from or in consequence of any **Wrongful Act** first committed before the **First Inception Date**, if, on or before such date, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or could result in a **Claim** against any **Insured**, provided that this Exclusion (H) shall only apply if coverage is afforded for **Wrongful Acts** first committed before the **First Inception Date**, as such coverage is determined by the Retroactive Date set forth in Item 8 of the MGCM Declarations;

(I)   Environmental Agents
      based upon, arising from or in consequence of any:

    (1)   **Environmental Agents**;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb Professional Portfolio*<sup>SM</sup>
*MediaGuard Claims Made*
*Liability Coverage Part*

(2)   request, demand, order or regulatory or statutory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **Environmental Agents**; or

(3)   action or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any **Environmental Agents**;

(J)   <u>Securities</u>
based upon, arising from or in consequence of any violation of **Securities Laws**;

(K)   <u>Disability Discrimination</u>
for any violation by any **Insured** of the responsibilities, obligations or duties imposed by any federal, state, or local statutory or common law anywhere in the world (including the Americans with Disabilities Act or the Civil Rights Act of 1964) or amendments to or regulations promulgated under any such law that governs the prohibition of discrimination on the basis of disability;

(L)   <u>Antitrust or Unfair Trade Practices</u>
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, interference with economic relations (including interference with contractual relations or with prospective advantage), unfair competition, unfair business or unfair trade practices, or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing, restraint of trade unfair competition, unfair business or unfair trade practices, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(M)   <u>Unsolicited Communications</u>
based upon, arising from or in consequence of any violation of:

(1)   the United States of America CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(2)   the United States of America Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; or

(3)   any other law, ordinance, regulation or statute used to impose liability in connection with any unsolicited communication, distribution, publication, sending or transmission;

(N)   <u>Governmental, Regulatory or Administrative Entity</u>
brought or maintained by or on behalf of any governmental or quasi-governmental entity, regulatory or administrative agency or authority;

(O)   <u>FDCPA or FCRA</u>
based upon, arising from or in consequence of any violation of the Fair Debt Collection Practices Act (FDCPA) or the Fair Credit Reporting Act (FCRA) or any amendments thereto or any rules or regulations promulgated thereunder, including the Fair and Accurate Credit Transactions Act (FACTA), or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(P)   <u>Unlawful Collection of Personal Information</u>
for the unlawful collection or acquisition of personal information by, on behalf of, or with the consent or cooperation of any **Insured**, if any chief financial officer, chief executive officer, chief operating officer, chief information officer, in-house general counsel, manager of the Board of Managers (or any equivalent position to any of the foregoing), or **Managing Partner** of an **Organization** knew of such unlawful collection or acquisition;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

(Q)  Consulting Services
based upon, arising from or in consequence of any professional, technology or consulting services which do not fall within the definition of **Activities**;

(R)  Contest or Lottery
based upon, arising from or in consequence of any act, error or omission in connection with any contest, lottery, promotional game or game of chance, including the printing of tickets or coupons for any of the foregoing, or the over-redemption of tickets, coupons or prizes for any of the foregoing; provided that this Exclusion (R) shall not apply to the extent that a **Claim** alleges:

(1)  invasion or infringement of the right of privacy or publicity, including the torts of intrusion upon seclusion, publication of private facts, false light, or misappropriation of name or likeness;

(2)  libel, slander, or any other form of defamation or harm to the character or reputation of any natural person or entity, including product disparagement or trade libel;

(3)  false arrest, detention or imprisonment, trespass, wrongful entry or eviction, eavesdropping, or other invasion of the right of private occupancy; or

(4)  copyright infringement or misappropriation of property rights, information or ideas or dilution or infringement of title, slogan, trademark, trade name, service mark, or service name;

(S)  Production Financing or Guarantees
based upon, arising from, or in consequence of any financing of any **Production** or any warranties or guarantees with regard to the performance of any **Production**;

(T)  Product Warranty or Guarantee
based upon, arising from or in consequence of any breach of express warranties or guarantees, breach of fiduciary relationships, malfunction or failure with respect to advertised products or services, including any bodily injury or property damage resulting therefrom, regardless of whether such bodily injury or property damage arises from a **Claim** of negligence as described in Subsection (F) of the definition of **Wrongful Act**;

(U)  Merchandising
based upon, arising from or in consequence of the licensing to any third party of any logo, symbol, trademark or other intellectual property for use in connection with the sale of goods or services directly relating to **Internet Activities** or **Media Activities**; provided that this Exclusion (U) shall not apply to **Production Activities**;

(V)  False Advertising
based upon, arising from or in consequence of false advertising, misrepresentation in advertising, or any unfair or deceptive trade practices, with respect to the advertising or sale of any **Insured's** own goods, products, publications or services; or any inaccurate, inadequate or incomplete description of the price of goods, products or services disseminated by, on behalf of, or with the consent of any **Insured**, or any failure of such goods, products or services to conform with advertised quality or performance;

(W)  Unauthorized Access, Impairment, and Unlawful Collection
based upon, arising from or in consequence of any:

(1)  unauthorized access to, alteration of, or damage to any computer, computer program, computer network or computer database, including the infection of any of the foregoing with a computer virus;

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

**CHUBB**

*Chubb Professional Portfolio*<sup>SM</sup>

**MediaGuard Claims Made
Liability Coverage Part**

---

(2)  delay, disruption or failure of any communication network, service, hardware or software, including any **Claim** for lost profits or opportunities as a result of such delay, disruption or failure; or

(3)  unauthorized or unlawful collection, use or dissemination of internet user information;

(X)  <u>Patent</u>
based upon, arising from or in consequence of any false patent marking, or any infringement of any patent, including contributing to or inducing any such infringement;

(Y)  <u>Decompilation or Reverse Engineering</u>
based upon, arising from or in consequence of any decompilation or reverse engineering of any other natural person's or entity's:

(1)  software or its source content or material;

(2)  other computer code or its source content or material; or

(3)  method or process designed to control or facilitate any operation or other use of any computer or other automated system,

that:

(a)  was committed by any **Insured**;

(b)  was committed with the consent or knowledge of any **Insured**; or

(c)  would have been expected from the standpoint of a reasonable person in the circumstances of any **Insured**,

provided that this Exclusion (Y) shall not apply to the extent that such decompilation or reverse engineering was expressly authorized by the owner of such software, code, method or process; or

(Z)  <u>Conduct</u>
based upon, arising from or in consequence of:

(1)  any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by, on behalf of, or with the consent of any **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding brought by or against the Company) establishes such an act or omission or violation; provided that this Exclusion (Z)(1) shall not apply to news reporting of events or happenings if the **Organization**, through its in-house or outside legal counsel, approves such conduct in advance based on a good faith belief that such conduct is protected by the First Amendment to the United States Constitution or equivalent law of another jurisdiction; or

(2)  an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that:

(a)  no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

(b)  any conduct pertaining to any past, present, or future chief financial officer, chief executive officer, chief operating officer, in-house general counsel, manager of the Board of Managers (or any

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

equivalent position to any of the foregoing), or **Managing Partner** of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

## IV.   LIMIT OF LIABILITY

(A)   The Company's maximum liability for all **Loss** on account of each **Claim** made during the **Policy Period** shall be the Each **Claim** Limit of Liability corresponding to Insuring Clause (A) Media Liability Coverage, set forth in Item 3 of the MGCM Declarations.

(B)   The Company's maximum liability for all **Subpoena Defense Costs** resulting from each **Covered Subpoena** first served during the **Policy Period** shall be the Each **Covered Subpoena** Limit of Liability corresponding to Insuring Clause (B) Subpoena Defense Coverage, set forth in Item 3 of the MGCM Declarations.

(C)   The Company's maximum liability for all **Loss** on account of all **Claims** and all **Subpoena Defense Costs** on account of all **Covered Subpoenas**, combined, shall be the Maximum Aggregate Limit of Liability set forth in Item 2 of the MGCM Declarations.

(D)   Upon exhaustion of the Maximum Aggregate Limit of Liability for all **Loss** and **Subpoena Defense Costs** set forth in Item 2 of the MGCM Declarations, or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, the Company shall have no further liability for **Loss** or **Subpoena Defense Costs** regardless of when a **Claim** is made or a **Covered Subpoena** is received.

## V.   RETENTION

(A)   The Company's liability under this Coverage Part shall apply only to that part of covered **Loss** on account of each **Claim** which is excess of the applicable Retention set forth in Item 4(A) of the MGCM Declarations.

(B)   The Company's liability under this Coverage Part shall apply only to that part of **Subpoena Defense Costs** on account of each **Covered Subpoena** which is in excess of the applicable Retention set forth in Item 4(B) of the MGCM Declarations.

(C)   The Retention shall be depleted only by **Loss** or **Subpoena Defense Costs** otherwise covered under this Coverage Part and shall be borne by the **Insureds** uninsured and at their own risk.  In the event that any **Insured** is unwilling or unable to bear the Retention, it shall be the obligation of the **Parent Organization** to bear such Retention uninsured and at its own risk.

(D)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(E)   **Claims** shall be subject to the Retention applicable to the **Policy Period** during which such **Claims** are first made or deemed to have been made or during which such **Covered Subpoena** is first received.

## VI.   REPORTING

(A)   An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** or **Covered Subpoena** as soon as practicable after the chief executive officer, president, chief financial officer, chief information officer, in-house general counsel, risk manager, **Managing Partner**, or any natural person with the responsibility for the

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made
Liability Coverage Part*

management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim** or first receives such **Covered Subpoena**, but in no event later than:

(1)    if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)    the expiration of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** or **Covered Subpoena** prior to the effective date of such termination.

(B)    If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Period** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, president, chief financial officer, chief information officer, in-house general counsel, risk manager, **Managing Partner**, or any natural person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)    An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A) or (B) above a description of the **Claim**, **Covered Subpoena**, or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

## VII.   DEFENSE AND SETTLEMENT OF CLAIMS, SUBPOENAS AND RETRACTION DEMANDS

(A)    The Company shall have the right and duty to defend any **Claim** or respond to any **Covered Subpoena** covered by this Coverage Part.  Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** or respond to any **Covered Subpoena** shall cease upon exhaustion of the applicable Limit of Liability.

(B)    The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(C)    No **Insured** shall settle any **Claim**, incur any **Defense Costs** or **Subpoena Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** or any **Covered Subpoena** without the Company's written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, **Subpoena Defense Costs**, assumed obligation or admission to which it has not consented.

(D)    The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or **Subpoena Defense Costs**, or to defend or continue to defend any **Claim** after the applicable Limit of Liability set forth in Item 3 of the MGCM Declarations, the Maximum Aggregate Limit of Liability set forth in Item 2 of the MGCM Declarations, or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations has been exhausted by the payment of **Loss** or **Subpoena Defense Costs** and the applicable premium shall be deemed fully earned.

(E)    If more than one **Insured** is involved in a **Claim**, the Company shall not pay for the representation by separate counsel for one or more of such **Insureds**, unless there is a material actual or potential conflict of interest among such **Insureds**.

CHUBB   Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb* **Professional Portfolio**[SM]
**MediaGuard Claims Made**
**Liability Coverage Part**

(F)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree to do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(G)   The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** or **Subpoena Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion III(Z), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

(H)   The **Insured** shall retain sole discretion regarding whether and under what circumstances to issue a retraction of **Matter** previously communicated, distributed or released by the **Insured**.

## VIII.   ALLOCATION

If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be considered covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Subsection XIII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**:  all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## IX.   OTHER INSURANCE

If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

Notwithstanding the forgoing, in the event an **Insured** has, prior to any **Wrongful Act**, contractually obligated itself to provide primary and non-contributory insurance to an **Insured Person**, as set forth in Subsection (B) or (C) of the definition of **Insured Person**, this Coverage Part will be considered primary and not excess of or contributory to any other insurance provided by, or for the benefit of, such **Insured Person**.

## X.   SUBROGATION

(A)   In the event of any payment under this Coverage Part, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery. As a condition precedent to the Company's payment under this Coverage Part, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of such documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

(B)   It is understood and agreed that the Company shall have no rights of subrogation against any **Insured** under this Coverage Part and that an **Organization** may, on behalf of the Company, waive the

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb* **Professional Portfolio**[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

Company's subrogation rights against any third party under this Coverage Part, provided that such waiver of subrogation is executed in writing prior to any **Wrongful Act**.

## XI.   CONFIDENTIAL SOURCES AND OTHER MATTER

The **Insured's** rights under this Coverage Part shall not be prejudiced by the **Insured's** refusal to reveal the identity of a **Confidential Source** or to produce reporter's notes or any other documents or information obtained by the **Insured** in the course of the **Insured's Activities** with respect to which the **Insured** has asserted a claim of reporter's privilege or other applicable constitutional, statutory or common-law privilege relating to the protection of newsgathering activities.

## XII.   CHANGES IN MEDIA EXPOSURE

(A)   **Acquired Media Asset**

    (1)   If after the inception date set forth in Item 2(A) of the GTC Declarations, any **Organization** acquires any publications, programs, broadcast or cable stations, or other communications asset or Websites (each an "Acquired Asset") then coverage shall be provided for such Acquired Asset under this Coverage Part but only for **Wrongful Acts** occurring after the effective date of such acquisition as follows:

        (a)   if, at the time of an acquisition, the annual revenues (or projected annual revenues) of the Acquired Asset are equal to or less than twenty-five percent (25%) of the annual revenues of all of the **Organizations**, as reflected in the **Organizations'** or **Parent Organization's** then most recently concluded fiscal year end financial statements or fiscal quarterly financial statements, then the **Parent Organization** shall provide to the Company written notice of the acquisition containing full details thereof when it next applies for renewal of this Policy. As a condition precedent to providing coverage for such Acquired Asset upon renewal, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium; or

        (b)   if, at the time of an acquisition, the annual revenues (or projected annual revenues) of the Acquired Asset exceed twenty-five percent (25%) of the annual revenues of all of the **Organizations**, as reflected in the **Organizations'** or **Parent Organization's** then most recently concluded fiscal year end financial statements or fiscal quarterly financial statements, then the **Parent Organization** shall provide to the Company written notice of the acquisition containing full details thereof, as soon as practicable, but in no event later than ninety (90) days after the date of such acquisition. As a condition precedent to providing coverage for such Acquired Asset, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium. If the **Parent Organization** fails to give notice within such ninety (90) day period, or fails to pay any additional premium required by the Company, coverage under this Coverage Part for such Acquired Asset shall terminate with respect to **Wrongful Acts** occurring more than ninety (90) days after such acquisition.

    (2)   Section (A)(1) shall apply notwithstanding Section VI(A), Acquisition of Another Organization, of the General Terms and Conditions, regardless of whether the acquisition of any Acquired Asset involves the acquisition of voting rights in another entity such that the acquired entity becomes a **Subsidiary**.

CHUBB

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

*Chubb Professional Portfolio*[SM]
*MediaGuard Claims Made*
*Liability Coverage Part*

(B)   **Creation of Covered Media**

If after the inception date set forth in Item 2(A) of the GTC Declarations, any **Organization** creates any new publications, programs, broadcast or cable stations, or other communications not already contemplated by **Covered Media** (each a "Created Media"), then coverage under this Coverage Part shall be provided for such Created Media but only for **Wrongful Acts** occurring after the effective date of such creation as follows:

(1)   if, at the time of creation, the projected annual revenues of the Created Media are equal to or less than twenty-five percent (25%) of the annual revenues of all of the **Organizations**, as reflected in the **Organizations'** or **Parent Organization's** then most recently concluded fiscal year end financial statements or fiscal quarterly financial statements, then the **Parent Organization** shall provide to the Company written notice of the Created Media containing full details thereof when it next applies for renewal of this Policy.   As a condition precedent to providing coverage for such Created Media upon renewal, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium; or

(2)   if, at the time of creation, the projected annual revenues of the Created Media exceed twenty-five percent (25%) of the annual revenues of all of the **Organizations**, as reflected in the **Organizations'** or **Parent Organization's** then most recently concluded fiscal year end financial statements or fiscal quarterly financial statements, then the **Parent Organization** shall provide to the Company written notice of the Created Media containing full details thereof, as soon as practicable, but in no event later than ninety (90) days after the date of such creation.   As a condition precedent to providing coverage for such Created Media, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium.   If the **Parent Organization** fails to give notice within such ninety (90) day period, or fails to pay any additional premium required by the Company, coverage under this Coverage Part for such Created Media shall terminate with respect to **Wrongful Acts** occurring more than ninety (90) days after such creation.

(C)   **Creation of Websites and Use of New Social Media Platforms**

If after the inception date set forth in Item 2(A) of the GTC Declarations, any **Organization** creates any new Websites or uses any new social media platforms (each a "New Website"), then coverage shall be provided under this Coverage Part for such New Website with respect to any **Wrongful Acts** occurring after the effective date of such creation or use.   The **Parent Organization** shall provide to the Company written notice of the New Website containing full details thereof when it next applies for renewal of this Policy.   As a condition precedent to providing coverage for such New Website upon renewal, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium.

XIII.   **REPRESENTATIONS AND SEVERABILITY**

(A)   In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.   Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.



Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

CHUBB

*Chubb Professional Portfolio*<sup>SM</sup>
*MediaGuard Claims Made*
*Liability Coverage Part*

(B)   The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)   However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

   (1)   any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations); or

   (2)   any **Organization** if any past or present chief financial officer, chief executive officer, in-house general counsel, manager of the Board of Managers (or any equivalent position to any of the foregoing), or **Managing Partner** of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)   The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section: Chubb Professional Portfolio MediaGuard Claims Made Liability Coverage Part FED

Effective date of
this endorsement: November 11, 2015

Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8246-1111

Issued to: ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

---

**CALIFORNIA AMENDATORY ENDORSEMENT**
**TO THE MEDIAGUARD CLAIMS MADE LIABILITY COVERAGE PART**

In consideration of the premium charged, it is agreed that:

1.    Subparagraph (B) in the definition of **Loss** as set forth in Section II, Definitions, is deleted and replaced with the following:

(B)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages; and provided further that, if such jurisdiction is the State of California, then **Loss** does not include punitive, exemplary or multiplied damages;

The Policy will be deemed to have been amended to the extent necessary to effect the purposes and intent of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supercede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of California.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: Chubb Professional Portfolio MediaGuard Claims Made Liability Coverage Part FED

Effective date of
this endorsement/rider: November 11, 2015          Federal Insurance Company

                                                   Endorsement/Rider No. 2

                                                   To be attached to and
                                                   form a part of Policy No. 8246-1111

Issued to:  ASSOCIATED THIRD PARTY ADMINISTRATORS AND ITS SUBSIDIARIES

---

LIMITED MEDIA LIABILITY ENDORSEMENT: INTELLECTUAL PROPERTY COVERAGE FOR SERVICE PROVIDERS

In consideration of the premium charged, it is agreed that this Coverage Part is amended as follows:

(1)     Insuring Clause (B) is deleted.  All references to Insuring Clause (B) in this Coverage Part are
        deleted.

(2)     The definitions of **Activity(ies)**, **Covered Media**, **Media Activities** and **Wrongful Act**, in Section II,
        Definitions, are deleted and replaced with the following respective definitions:

        (a)     **Activity(ies)** means **Media Activities**.

        (b)     **Covered Media** means all advertising, broadcasting, internet, mobile, programming,
                production, publishing, social media and social networking **Matter** created by or on behalf of
                an **Insured** solely in the course of performing services for others for a fee. **Covered Media**
                shall not include any **Matter** consisting of or relating to advertising, publicizing, promotion or
                sale of the goods or services of an **Insured**.

        (c)     **Media Activities** means the development, creation, production, placement or dissemination
                of **Matter** consisting of or relating to advertising, publicizing, promotion or sale of the goods or
                services of others where such **Matter** is in, or directly relating to, the **Covered Media**.

        (d)     **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act,
                omission, neglect or breach of duty arising directly out of the **Insured's Activities** that results
                solely in copyright infringement or misappropriation of property rights, information or ideas or
                dilution or infringement of title, slogan, trademark, trade name, trade dress, service mark or
                service name.

(3)     Paragraph (B) in the definition of **Insured Person** in Section II, Definitions, is deleted.

(4)     The definitions of **Confidential Source**, **Covered Subpoena**, **Internet Activities**, **Internet Site**,
        **Production(s)**, **Production Activities**, and **Subpoena Defense Costs** in Section II, Definitions, are
        deleted.  All references to the foregoing throughout this Coverage Part are deleted.

(5)     Subparagraphs (2), (3) and (6) of Exclusion III(G), Contract, is deleted.

14-02-20991 (06/2015)                 Page 1

(6)    Subparagraphs (1), (2) and (3) of Exclusion III(R), Contest or Lottery, is deleted.

(7)    Exclusion III(S), Production Financing or Guarantees, is deleted.

(8)    Exclusions III(C), III(Q) and III(T) are deleted and replaced with the following respective definitions:

    (C)    <u>Bodily Injury/ Property Damage</u>
for bodily injury (except mental anguish, humiliation, and emotional distress), sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

    (Q)    <u>Consulting Services</u>
based upon, arising from or in consequence of any professional, technology or consulting services which do not fall within the definitions of **Wrongful Act** and **Media Activities;**

    (T)    <u>Product Warranty or Guarantee</u>
based upon, arising from or in consequence of any breach of express warranties or guarantees, breach of fiduciary relationships, malfunction or failure with respect to advertised products or services, including but not limited to any actual or alleged bodily injury or property damage resulting therefrom;

(9)    The Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from or in consequence of any:

    (a)    libel, slander, product disparagement, trade libel or other form of defamation;

    (b)    invasion or infringement of the right of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness;

    (c)    false arrest, detention or imprisonment; or

    (d)    wrongful entry or eviction, or other invasion of the right of private occupancy.

(10)    Section XI, Confidential Sources and Other Matter, is deleted.

(11)    Section XII, Changes in Media Exposure, is deleted.

(12)    Item 5, Covered Media, Item 6, Internet Site(s), and Item 7, Productions, of the MGCM Declarations are deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
## (for policies with no terrorism exclusion or sublimit)
## Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1900 Avenue of the Stars, 11th Floor, Los Angeles, California  90067-4402

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S AMENDED MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD UNDER DEBTOR'S PROFESSIONAL LIABILITY INSURANCE POLICY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 3/10/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On 3/10/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/10/17, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/10/2017 | Beverly Lew | /s/ |
| *Date* | *Printed Name* | *Signature* |

## SERVICE LIST

**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Todd M Arnold on behalf of Debtor Associated Third Party Administrators
tma@lnbyb.com

Catherine Arostegui on behalf of Creditor OPEIU Local 3/Local 29
carostegui@beesontayer.com, akenney@beesontayer.com

Ron Bender on behalf of Debtor Allied Fund Administrators LLC
rb@lnbyb.com

Ron Bender on behalf of Debtor Associated Third Party Administrators
rb@lnbyb.com

Ron Bender on behalf of Debtor In Possession Allied Fund Administrators LLC
rb@lnbyb.com

Stuart E Bernsen on behalf of Creditor Pension Benefit Guaranty Corporation
bernsen.stuart@pbgc.gov, efile@pbgc.gov

Lynn Brown on behalf of Creditor American Express Travel Related Services
Company Inc
notices@becket-lee.com

Shawn M Christianson on behalf of Creditor Oracle America, Inc.
cmcintire@buchalter.com, schristianson@buchalter.com

Aaron E De Leest on behalf of Trustee Richard K Diamond (TR)
aed@dgdk.com, DanningGill@gmail.com;adeleest@ecf.inforuptcy.com

Ronald Dean on behalf of Interested Party Courtesy NEF
rdean@74erisa.com, rdean@igc.org

Richard K Diamond (TR)
RKDTrustee@dgdk.com, rdiamond@ecf.epiqsystems.com;DanningGill@Gmail.com

Jonathan R Doolittle on behalf of Interested Party Western States Office and
Professional Employees Pension Fund and Board of Trustees of Western States Office
and Professional Employees Pension Fund
jdoolittle@reedsmith.com, renee-pelusi-
2054@ecf.pacerpro.com;rpelusi@reedsmith.com;ashively@reedsmith.com;dkelley@r

eedsmith.com;bobmiller@kilmerlaw.com;cbroock@kilmerlaw.com;llhomedieu@kilmerlaw.com

Jamie P Dreher on behalf of Creditor CAMOFI Master LDC and CAMHZN Master LDC
jdreher@downeybrand.com,
mfrazier@downeybrand.com;courtfilings@downeybrand.com

Jamie P Dreher on behalf of Interested Party Courtesy NEF
jdreher@downeybrand.com,
mfrazier@downeybrand.com;courtfilings@downeybrand.com

Richard W Esterkin on behalf of Creditor Southern California Local 831 Employer Pension Trust Fund
richard.esterkin@morganlewis.com, gloria.moonesinghe@morganlewis.com

Richard W Esterkin on behalf of Debtor Associated Third Party Administrators
richard.esterkin@morganlewis.com, gloria.moonesinghe@morganlewis.com

Edward M Fox on behalf of Creditor New House Administrators, LLC
emfox@seyfarth.com

Edward M Fox on behalf of Debtor Associated Third Party Administrators
emfox@seyfarth.com

Luis A Garcia on behalf of Interested Party Thomas E. Perez
garcia.luis.a@dol.gov

Michael I Gottfried on behalf of Interested Party Courtesy NEF
mgottfried@lgbfirm.com,
kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;mmocciaro@lgbfirm.com

Brian T Harvey on behalf of Creditor Oracle America, Inc.
bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com

Mickee Hennessy on behalf of Creditor Shred-It USA
mhennessy@westermanllp.com

Jacqueline L James on behalf of Debtor Allied Fund Administrators LLC
jlj@lnbyb.com

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD

Jacqueline L James on behalf of Debtor Associated Third Party Administrators
jlj@lnbyb.com

Jacqueline L James on behalf of Debtor In Possession Allied Fund Administrators
LLC
jlj@lnbyb.com

Gary M Kaplan on behalf of Interested Party Trustees of the Operating Engineers
Trust Funds and Other Operating Engineers Entities
gkaplan@fbm.com

Eve H Karasik on behalf of Debtor Allied Fund Administrators LLC
ehk@lnbyb.com

Eve H Karasik on behalf of Debtor Associated Third Party Administrators
ehk@lnbyb.com

Eve H Karasik on behalf of Debtor In Possession Allied Fund Administrators LLC
ehk@lnbyb.com

Howard Kollitz on behalf of Trustee Richard K Diamond (TR)
HKollitz@DGDK.Com, DanningGill@gmail.com;hkollitz@ecf.inforuptcy.com

Jeffrey S Kwong on behalf of Debtor Allied Fund Administrators LLC
jsk@lnbyb.com, jsk@ecf.inforuptcy.com

Jeffrey S Kwong on behalf of Debtor Associated Third Party Administrators
jsk@lnbyb.com, jsk@ecf.inforuptcy.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov

Allison R Lemeshewsky on behalf of Interested Party Courtesy NEF
arlemesh@sbcglobal.net, ldtorres@sbcglobal.net;mwccoast@aol.com

Leib M Lerner on behalf of Interested Party Ad Hoc Employee Health and Pension,
Trust and Fund Group
leib.lerner@alston.com, autodockettest-lax@alston.com

Leib M Lerner on behalf of Interested Party Courtesy NEF
leib.lerner@alston.com, autodockettest-lax@alston.com

1

Elan S Levey on behalf of Creditor Pension Benefit Guaranty Corporation
elan.levey@usdoj.gov, louisa.lin@usdoj.gov

2

3

Tracy L Mainguy on behalf of Interested Party Courtesy NEF
bankruptcycourtnotices@unioncounsel.net, tmainguy@unioncounsel.net

4

5

Thor D McLaughlin on behalf of Creditor PTF for Operating Engineers, LLC
tmclaughlin@allenmatkins.com, igold@allenmatkins.com

6

7

Robert B Miller on behalf of Interested Party Western States Office and Professional
Employees Pension Fund and Board of Trustees of Western States Office and
Professional Employees Pension Fund

8

9

10

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbnlawyers.com, jdale@mirmanbubman.com

11

12

Melissa T Ngo on behalf of Creditor Pension Benefit Guaranty Corporation
ngo.melissa@pbgc.gov, efile@pbgc.gov

13

14

George R Pitts on behalf of Creditor Med-Tech Health Solutions, LLC
gpitts@sandsanderson.com, tkearns@sandsanderson.com

15

16

George R Pitts on behalf of Creditor Jesse M. Kessler
gpitts@sandsanderson.com, tkearns@sandsanderson.com

17

18

Kelly L Pope on behalf of Creditor CAMOFI Master LDC and CAMHZN Master
LDC
kpope@downeybrand.com,
mfrazier@downeybrand.com;courtfilings@downeybrand.com

19

20

21

Kurt Ramlo on behalf of Debtor Associated Third Party Administrators
kr@lnbyb.com, kr@ecf.inforuptcy.com

22

23

Kurt Ramlo on behalf of Debtor In Possession Allied Fund Administrators LLC
kr@lnbyb.com, kr@ecf.inforuptcy.com

24

25

Russell H Rapoport on behalf of Creditor Canon Financial Services Inc.
rrapoport@mbnlawyers.com, aacosta@mbnlawyers.com

26

27

Emily P Rich on behalf of Interested Party Courtesy NEF
erich@unioncounsel.net, bankruptcycourtnotices@unioncounsel.net;cak@blake-

28

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD

1    uhlig.com

2    Lovee D Sarenas on behalf of Creditor Karen Crampton
3    lovee.sarenas@lewisbrisbois.com

4    Lovee D Sarenas on behalf of Interested Party Courtesy NEF
5    lovee.sarenas@lewisbrisbois.com

6    Kenneth D Schnur on behalf of Interested Party Courtesy NEF
7    kenneth.schnur@kts-law.com, anastasia.mogilevsky@kts-law.com

8    Sonia Singh on behalf of Trustee Richard K Diamond (TR)
9    ss@dgdk.com

10    Lindsey L Smith on behalf of Debtor Allied Fund Administrators LLC
11    lls@lnbyb.com, lls@ecf.inforuptcy.com

12    Lindsey L Smith on behalf of Debtor Associated Third Party Administrators
13    lls@lnbyb.com, lls@ecf.inforuptcy.com

14    Lindsey L Smith on behalf of Debtor In Possession Allied Fund Administrators LLC
15    lls@lnbyb.com, lls@ecf.inforuptcy.com

16    Michele R Stafford on behalf of Creditor Automotive Industries Welfare Fund
17    mstafford@sjlawcorp.com, collections@sjlawcorp.com

18    Nicholas Starkman on behalf of Interested Party Courtesy NEF
19    nstarkman@wkclegal.com, syoung@wkclegal.com

20    Nicola G Suglia, Esq on behalf of Interested Party Courtesy NEF
21    nsuglia@fleischerlaw.com

22    David A Tilem on behalf of Creditor Basys, Inc.
23    davidtilem@tilemlaw.com,
      DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilem
24    law.com;JoanFidelson@ecf.inforuptcy.com;MalissaMurguia@ecf.inforuptcy.com;Syl
25    viaTilemLaw@gmail.com

26    United States Trustee (LA)
27    ustpregion16.la.ecf@usdoj.gov

28

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD

1

**SERVED BY PERSONAL SERVICE:**
Honorable Sandra R. Klein
United States Bankruptcy Court
Central District of California
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR AUTHORITY TO PURCHASE EXTENDED REPORTING PERIOD